UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CHARLES LACHNEY                    CIVIL ACTION NO. 07-cv-0398

VERSUS                             JUDGE HICKS

CHARLES GRAY                       MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Charles Lachney ("Plaintiff") filed this pro se civil rights action against officials at the Bossier Medium Security Facility, where Plaintiff was housed for approximately eight months. Plaintiff alleged in his complaint, as amended, that he was taken off his seizure medication, denied protective custody or transfer, and subjected to excessive force.

The court reviewed the complaint, which named several defendants, and directed that Plaintiff file a copy of the complaint and completed summonses for each defendant, so that the Marshal could make service. Plaintiff provided a service address at the jail, and service there was accepted by current employees of the Bossier Parish Sheriff. It was learned that the other defendants (Deputy Chancellar, Deputy Carpenter, Deputy Maggio, Dr. Russell, and Dr. Roberts) were not known employees of the Bossier Parish Sheriff. Plaintiff was granted leave to conduct discovery and learn a proper address for the unserved Defendants.

He was unable to do so after a reasonable time, so a Report and Recommendation (Doc. 36) issued and recommended that all claims against those defendants be dismissed without prejudice.

Defendants Charles Gray, Norman McKellar, Jeffory Kain, and Jennifer McDaniel have now filed a Motion for Summary Judgment (Doc. 37) that attacks the merits of the allegations against them. The Clerk of Court issued a notice (Doc. 38) on December 23, 2008 that advised that Plaintiff had 15 calendar days to file any memorandum in opposition to the motion. More than 60 days have passed, but Plaintiff has not filed any memorandum in opposition. Plaintiff did file one submission (Doc. 39), which was docketed as an objection to the earlier Report and Recommendation, but it could also be liberally construed as opposition to the motion for summary judgment. The two-page submission is not accompanied by any competent summary judgment evidence. It merely makes a general plea that the court not drop the suit, and Plaintiff complains that the defendants do not know how to properly run the prison facility.

**Summary Judgment Standard**

Summary judgment is proper when the movant can demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. All facts and inferences must be construed in the light most favorable to the non-movant. Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 248 (5th Cir. 2008). But where the non-moving party fails to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial, no genuine issue of material fact can exist. McLaurin v. Noble Drilling (US) Inc., 529 F.3d 285, 288 (5th Cir. 2008).

**Summary Judgment Record**

Jennifer McDaniel, a nurse at the Bossier facility, testifies about Plaintiff's medical care, and she attaches to her affidavit certified copies of Plaintiff's voluminous medical records from his short stay at the facility. Nurse McDaniel testifies that Plaintiff was given a medical screen for health conditions and medications when he arrived at the facility, and it was noted that he had a history of seizures. Plaintiff was, therefore, assigned a lower bunk bed. Note was made of the medications Dilantin, Lopid, and Docusate.

McDaniel testifies that Plaintiff, during his time at the facility, was seen at least nine times by the physician, 25 times by a nurse or paramedic, once by a psychologist, once by a dentist, and he had visits to the LSU-HSC ophthalmology clinic. The Bossier medical personnel monitored Plaintiff's Dilantin (anti-seizure medication) level. It was noticed as being at a sub-therapeutic level, so the physician directed that it be checked again in three weeks. The follow-up level was also sub-therapeutic, even though the Dilantin medication had been increased. Dr. Roberts then discontinued the Dilantin, as Plaintiff had experienced no seizure activity with the sub-therapeutic level. (Nurse McDaniel testifies that she lacked authority to order the discontinuation of a medication). Captain Charles Gray testifies that Plaintiff was placed on med watch for a time to observe any seizure activity. Once the medical condition was validated, Plaintiff was returned to his dormitory. Deputy McKellar

testifies, as did Gray, that Plaintiff was placed on med watch for four days to observe any indication of a seizure. McKellar, who monitored prisoners from the control room, testifies that Plaintiff was monitored by camera, and no seizure activity was noted.

Captain Gray also testifies to the general procedures at the facility for an inmate to request medical care. He testifies that he is aware that Plaintiff was seen by medical staff multiple times while he was an inmate at the facility. Gray denies knowledge of any seizures that occurred during that time. With respect to Plaintiff's complaints about not being transferred, Gray testifies that the Department of Corrections has a policy that an inmate is not considered for transfer if he has a disciplinary write-up within six months of the request. Plaintiff had three disciplinary write-ups during the time of his incarceration in Bossier from July 2006 until his transfer in March 2007. The infractions were for contraband, a weapon, and medication found in his cell.

Gray testifies in his Affidavit that at no time did he "physically 'slap' Lachney (Plaintiff) and [he] is unaware of any other personnel striking the inmate." When a denial is framed so narrowly, as in the above sentence, courts sometime become concerned that the affiant is attempting to avoid giving testimony regarding other acts or omissions. Plaintiff alleged that Gray "slapped" him twice and "punched [him] in [his] head enough to go into a seizure...." Gray's testimony denies only slapping Plaintiff. He does not deny "punching" Plaintiff. Nevertheless, the court will accept the testimony as denying the allegations of

excessive force with respect to this unopposed motion, but such narrow denials by Gray and similarly situated affiants should be avoided (except where necessary) in future cases.

With respect to protective custody, Gray testifies that he is aware that Plaintiff accused other inmates of attempting to sexually assault him. Gray testifies that an investigation was inconclusive as to the named inmates and what actually occurred. Based on the investigation, Plaintiff was not placed in protective custody, and no request was ever received for protective custody. Plaintiff was transferred one day after an alleged assault by other inmates.

Deputy McKellar testifies that, during the relevant time, he worked in the control room. It was his responsibility to monitor the area and notify prison staff if assistance was needed. He states that his only communication with prisoners was to make announcements. McKellar specifically denies having any physical contact with the prisoners or any responsibility for giving medication. He also testifies that, "[a]s a staff member working in the Control Room, appearer did not witness or have any knowledge of threats, any incidents regarding physical attack, use of excessive force or sexual attack on the inmate." McKellar testifies that he did not see Plaintiff struck by Captain Gray or any other personnel at the facility.

Deputy Jeffory Kain testifies that he was working as a trainee at the facility during the relevant time. His duties included monitoring hallways and sick call, but he had no administrative duties. Kain denies knowledge of Plaintiff ever requesting protective custody

or a transfer. He states that if a request had been made, it would have been forwarded to a supervisor with authority to act on such matters. Kain denies that he participated in any physical or verbal assaults on any inmate, including Plaintiff. He adds that he did not witness any seizure activity by Plaintiff.

**Analysis**

    **A. Excessive Force**

A convicted prisoner's excessive force claim is analyzed under the Eighth Amendment. It provides a cause of action if the force was applied maliciously and sadistically for the purpose of causing harm, rather than a good-faith effort to maintain or restore discipline. Hudson v. McMillian, 112 S.Ct. 995 (1992). Movants have presented competent summary judgment evidence that directly challenges the unsworn allegations in Plaintiff's complaint that Plaintiff was subjected to excessive force. Plaintiff has not responded with summary judgment evidence that would create a genuine issue of material fact, so summary judgment is warranted on all excessive force claims.

    **B. Medical Care**

For Plaintiff to prevail on his claim that his medical care violated the Constitution, he must prove that a defendant was "deliberately indifferent" to his "serious medical needs." Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a

or a transfer. He states that if a request had been made, it would have been forwarded to a supervisor with authority to act on such matters. Kain denies that he participated in any physical or verbal assaults on any inmate, including Plaintiff. He adds that he did not witness any seizure activity by Plaintiff.

**Analysis**

    **A. Excessive Force**

A convicted prisoner's excessive force claim is analyzed under the Eighth Amendment. It provides a cause of action if the force was applied maliciously and sadistically for the purpose of causing harm, rather than a good-faith effort to maintain or restore discipline. Hudson v. McMillian, 112 S.Ct. 995 (1992). Movants have presented competent summary judgment evidence that directly challenges the unsworn allegations in Plaintiff's complaint that Plaintiff was subjected to excessive force. Plaintiff has not responded with summary judgment evidence that would create a genuine issue of material fact, so summary judgment is warranted on all excessive force claims.

    **B. Medical Care**

For Plaintiff to prevail on his claim that his medical care violated the Constitution, he must prove that a defendant was "deliberately indifferent" to his "serious medical needs." Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a

constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

The summary judgment evidence shows that Plaintiff received frequent medical care for a variety of ailments. His primary complaint, the discontinuance of Dilantin, is explained by Nurse McDaniel to have been at the direction of a physician based on his reasoned medical judgment. Other evidence shows that Plaintiff was carefully monitored for four days after the medicine was discontinued, and no seizures were detected. There is no evidence Plaintiff had any seizures at the facility. Plaintiff's unsworn allegations are insufficient to defeat summary judgment on this claim.

### C. Protective Custody

Plaintiff complains that he should have been given protective custody or transfer. To establish a failure to protect claim, Plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. To act with deliberate indifference, the official must be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference. Farmer v. Brennan, 114 S.Ct. 1970 (1994); Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995).

Captain Gray testified that he was aware of only one potential basis for which Plaintiff might need protective custody, but an investigation did not bear out that need. Plaintiff was transferred one day after an attack. Those unchallenged facts do not suggest deliberate

indifference. There is no genuine issue of material fact with regard to this issue, so summary judgment is appropriate.

The same is true with respect to any remaining aspects of Plaintiff's complaint. The summary judgment evidence offered by the movants directly challenges the allegations in the complaint, and that evidence has not been met with any competing evidence that would give rise to a genuine issue that requires a trial.

Accordingly;

**IT IS RECOMMENDED** that the **Motion for Summary Judgment (Doc. 37)** filed by Charles Gray, Norman McKellar, Jeffory Kain, and Jennifer McDaniel be **granted** and that all claims against those defendants be **dismissed with prejudice**.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 30th day of March, 2009.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE